UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. S1-4:23-CR-00562 HEA |
| ERIC WASHINGTON, | ) | |
| Defendant. | ) | |

**GUILTY-PLEA AGREEMENT**

COME NOW the parties and hereby agree as follows:

**1. PARTIES**

The parties are Defendant Eric Washington, represented by defense counsel David A. Bruns and Cira R. Duffe, and the United States of America ("the Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA**

**A. The Plea:** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A), in exchange for Defendant's voluntary plea of guilty to the lesser-included offense in Count One, conspiracy to commit murder-for-hire resulting in personal injury, and the lesser included offense in Count Two, murder-for-hire resulting in personal injury, of the Superseding Indictment, the Government agrees that no further federal prosecution will be brought in this District relative to

violations of federal law, known to the Government at this time, arising out of the events set forth in the Indictment.

**B. The Sentence:** The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. The parties understand that the Court is neither a party to, nor bound by, the Guidelines recommendations agreed to in this document. **Further, in exchange for the Government's agreement to allow Defendant to plead to the lesser included offenses in Counts One and Two of the Superseding Indictment, the parties agree to jointly recommend an aggregate sentence between 25 years (300 months) and 30 years (360 months).**

**3. ELEMENTS**

**A. Count One:** As to Count One, Defendant admits to knowingly violating 18 U.S.C. § 1958, admits there is a factual basis for the plea, and fully understands that the elements of the crime are as follows:

**(i)** Beginning at a time unknown, but up to and including July 7, 2023, and through the date of the Superseding Indictment, in the City of St. Louis and elsewhere within the Eastern District of Missouri, Defendant Eric Washington, and others reached an agreement to commit the crime of use of a facility of interstate commerce, to wit, cellular telephones, with the intent that a murder be committed in violation of the laws of the State of Missouri, in exchange for or as consideration for anything of pecuniary value;

**(ii)** The Defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some time later while it was still in effect;

**(iii)** At the time Defendant joined in the agreement Defendant knew of the purpose of the agreement;

**(iv)** While the agreement was in effect, a person or persons who had joined in the agreement knowingly undertook one or more overt acts for the purpose of carrying out or carrying forward the agreement; and

(v) Personal injury to Andreaia Worthem resulted from the conspiracy on or about July 7, 2023.

**B. Count Two:** As to Count Two, Defendant admits to knowingly violating 18 U.S.C. § 1958, admits there is a factual basis for the plea, and fully understands that the elements of the crime are as follows:

(i) On or about July 7, 2023, Defendant Eric Washington, aiding and abetting others, used a cellular telephone, a facility of interstate commerce;

(ii) That the cellular telephone was used with the intent that a murder be committed, in violation of the laws of the State of Missouri;

(iii) That anything of pecuniary value was received or promised to be paid as consideration for the murder; and

(iv) Personal injury to Andreaia Worthem resulted.

**4. <u>FACTS</u>**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to U.S.S.G. § 1B1.3.

A. <u>Defendant Eric Washington Agrees to Kill Andreaia Worthem for Payment</u>

In or around June 2023, co-Defendant Andrew Hubbard solicited his cousin, Defendant Eric Washington, to murder Hubbard's mother, Andreaia Worthem, by providing her with crack cocaine laced with fentanyl or heroin that would result in her fatal overdose. Defendant had previously told Hubbard that he experienced a non-fatal overdose after ingesting drugs that co-Defendant Justin Lee had supplied to him. Defendant knew that Hubbard had a policy insuring Worthem's life and agreed to supply Worthem with a quantity of crack cocaine that was laced with fentanyl or heroin in exchange for $10,000.

After reaching the agreement, Hubbard took Defendant to Worthem's apartment complex in St. Louis County, showed him where Worthem lived, and provided him with Worthem's cellphone number. Days later, Defendant met with Hubbard and told them that as soon as Lee had mixed up the "bad pack" and he had access to a car, Defendant planned to travel to Worthem's apartment to provide her with the laced crack cocaine.

B. <u>Worthem's Murder</u>

After reaching the agreement with Hubbard, Defendant borrowed a GMC Envoy from an associate. In the morning of July 6, 2023, Defendant spoke to Hubbard using his cellphone and told Hubbard he had gained access to a car and planned on "getting outside tonight." Hours later, Defendant spoke to Hubbard using his cellphone and Hubbard confirmed that Worthem would be at her apartment. Defendant again discussed with Hubbard the plan to supply Worthem with the "bad pack" to cause her to overdose. Hubbard also instructed Defendant to make any future calls to co-Defendant Kim Mosley's cellphone because he did not want a record of his cellphone communicating with Defendant close to the time of Worthem's death.

Defendant then drove the GMC Envoy to Lee's house at 7010 Stratford Avenue and picked him up. Defendant and Lee travelled together to Worthem's apartment. Once there, Defendant called Mosley's cellphone using Lee's cellphone and told Hubbard that he was outside Worthem's apartment. Around 10:00pm, Worthem got into the Envoy with Defendant and Lee. Defendant then drove the group from St. Louis County into the City of St. Louis. After arriving in 4400 block of Kennerly Avenue, Defendant shot Worthem multiple times with a revolver, striking her in the face, chest, and arm. Defendant took Worthem's cellphone before he and Lee left her body in the alley and fled to a house near the intersection of St. Louis Avenue and Whittier. Just after 11:00pm, Defendant used Lee's cellphone to call Hubbard and told him that Worthem was dead.

C. Defendant and Lee Meet with Hubbard after Worthem's Murder

Mosley later called Lee's cellphone and told Defendant that Hubbard wanted to meet them on Union Avenue near a house where Hubbard previously lived. Around 2:00am on July 7, Defendant arrived with Lee in the Envoy. There, Defendant told Hubbard that the "bad pack" did not work, so he shot Worthem instead. Defendant confirmed that he took Worthem's cellphone after shooting her and left her body in the alley.

D. Defendant Receives Partial Payment for Worthem's Murder

Later in the day on July 7, Defendant met with Mosley, who paid him $200. During that meeting, Defendant provided Mosley with Worthem's cellphone. On a separate occasion, Defendant met with Hubbard and Mosley, who paid him $450. Defendant also received cocaine and marijuana from Hubbard as a form of payment.

After Worthem's murder, Defendant told Hubbard that he still had the Envoy that he and Lee used to pick up Worthem and drive her to the alley where he shot her. Defendant later drove the Envoy, being followed by Hubbard and Mosley in a separate car, to Illinois and returned it to its owner. After dropping off the Envoy, Defendant rode back to the City of St. Louis with Hubbard and Mosley.

In the weeks after Worthem's murder, Defendant grew impatient over Hubbard not paying him the full $10,000 that the two had agreed on. Defendant then called the Primerica representative who processed the policy insuring Worthem's life and asked when the proceeds would be paid out, telling the representative that he had "done some work" for Hubbard and that Hubbard owed him money.

5. **STATUTORY PENALTIES**

**A. Statutory Penalties:** Defendant fully understands that the maximum possible penalties provided by law for the crimes to which Defendant is pleading guilty are:

**(i) The lesser included offenses in Counts One and Two:** imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years.

6. **U.S. SENTENCING GUIDELINES (2025 MANUAL)**

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply:

**A. Chapter 2 Offense Conduct**

**COUNTS ONE AND TWO**
**(Conspiracy to Commit Murder for Hire and Murder for Hire)**

**(i) Chapter 2 Offense Conduct**

**(a) Base Offense Level:** The parties agree that the base offense level for Counts One and Two is 43, as found in U.S.S.G. § 2E1.4 and its cross-reference to 2A1.1, First Degree Murder.

**(b) Specific Offense Characteristics:** The parties agree that, at the time of this agreement, there a no known Specific Offense Characteristics that apply.

**(ii) Chapter 3 and 4 Adjustments**

**(a) Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to U.S.S.G. § 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If this deduction is applied, and if Defendant is

otherwise eligible, then the Government moves to deduct one additional level pursuant to U.S.S.G. § 3E1.1(b)(2), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The parties further agree that Defendant's eligibility for this reduction is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the Government subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility, including criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

**B. Estimated Total Offense Level:** Based on these recommendations, the parties estimate that the Total Offense Levels are as follows:

**(i) Counts One and Two:** The parties agree that the Total Offense Level for Counts One and Two is 40.

**C. Criminal History:** The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to Defendant's criminal history and the applicable category. Defendant's criminal history is known to Defendant and is substantially available in the Pretrial Services Report.

**D. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite

the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS**

**A. Appeal:** Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under 18 U.S.C. § 3742.

**i. Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including any issues relating to pretrial motions, discovery and the guilty plea.

**ii. Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues, provided that the Court sentences Defendant to the parties' joint recommendation of an aggregate sentence between 25 years (300 months) and 30 years (360 months). Otherwise, the adversely affected party—the defendant if the sentence is higher, or the Government if the sentence is lower—reserves the right to appeal only sentencing issues related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness.

**B. Habeas Corpus:** Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**C. Right to Records:** Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, *see* 5 U.S.C. § 522, or the Privacy Act, *see* 5 U.S.C. § 552(a).

**8. OTHER**

**A. Disclosures Required by the United States Probation Office:** Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

**B. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the Government to take any civil, tax, immigration/deportation or administrative action against Defendant.

**C. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on Defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in 18 U.S.C. § 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

**D. Mandatory Special Assessment:** This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which Defendant agrees to pay at the time of

sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**E. Possibility of Detention:** Defendant may be subject to immediate detention pursuant to the provisions of 18 U.S.C. § 3143.

**F. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration, and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately.

**G. Forfeiture:** Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. Defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, Defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

Defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to Defendant when it is issued and will be part of the sentence. Defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. Defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged

third party owners. Defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that Defendant was not given adequate notice of forfeiture in the charging instrument.

**9. ACKNOWLEDGMENT AND WAIVER OF DEFENDANT'S RIGHTS**

In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, such as motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely

and satisfactorily explored all areas which Defendant has requested relative to the Government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT

This document constitutes the entire agreement between Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement that deal with charges the Government agrees to dismiss or not to bring.

07.30.26
Date

Matthew A. Martin
Assistant United States Attorney

7-30-26
Date

Eric Washington
Defendant

7-30-26
Date

David A. Bruns
Cira R. Duffe
Attorneys for Defendant